No. 60,547

ARTHUR BOCKHAUS; THERESA BOCKHAUS; RICHARD E. THRASHER; BILL MAYFIELD; RUTH A. MAYFIELD; LOY DILLMAN; FLORA H. DILLMAN; OMRI P. MANRING; and HAZEL MANRING, *Appellants*, v. CITY OF HALSTEAD, KANSAS; DOREL NEUFELD; RICHARD O. PIKE; CARL R. SHEFFLER, JR.; JOHN E. TALBOTT; FRANK WHITESELL; WILLIAM D. LUCHT; DONALD W. OSENBAUGH; ALICE CONSIDINE; and MIKE HAYDEN, *Appellees*.

(748 P.2d 870)

Opinion filed January 15, 1988.

*L. H. Goossen*, of Newton, argued the cause and was on the brief for appellants.

*Steve Kerwick*, of Foulston, Siefkin, Powers & Eberhardt, of Wichita, argued the cause, and *Jerry G. Elliott*, of the same firm, and *Larry R. Baer*, of Ice, Turner & Ice, of Newton, were on the brief for appellees.

*Mary P. Wettig*, assistant attorney general, and *Robert T. Stephan*, attorney general, were on the brief for appellee Mike Hayden.

The opinion of the court was delivered by

HOLMES, J.: This is an appeal by the plaintiffs from an order of the district court granting summary judgment in favor of the defendants in an action seeking a declaratory judgment setting aside the certification of the City of Halstead, Kansas, as a second-class city and to enjoin the city officials from taking any action as a second-class city. The appellants are citizens and taxpayers of the City of Halstead (hereafter City or Halstead) in Harvey County and the appellees are the City, several Halstead city officials, and the Governor of Kansas.

The underlying facts are not in dispute. As of 1980, U.S. Bureau of the Census records show that the City of Halstead, Kansas, had a population of 1,994. Consequently, Halstead was classified pursuant to Article 12, § 5(b) of the Kansas Constitution and K.S.A. 15-101 *et seq.*, as a city of the third class.

For several years, Halstead had been seeking federal assistance to finance construction of a flood control project. In late 1985 or early 1986, city officials were informed that legislation would be introduced in Congress to authorize federal assistance for the project. Because such projects require the recipient to put up 25% of the project cost, city officials were seeking ways to assure federal officials that those funds would be available should the federal flood control construction grant be forthcoming. Federal officials initially imposed a deadline of March 1, 1987, for the City to provide the necessary financial assurances, although that deadline was subsequently either extended or eliminated.

One method which could be used to meet the financial obligation for the project was the issuance of bonds pursuant to K.S.A. 12-635 *et seq.* K.S.A. 12-646 provides that bonds issued under authority of the act are not included in fixing the limit of bonded indebtedness for a second-class city; nor are they included in fixing that limit for third-class cities *if* the question of the bond issuance has been approved by a vote of the city electors conducted as provided by K.S.A. 1986 Supp. 10-120. Since Halstead was a third-class city, the issuance of bonds required approval by a vote of the electorate. City officials were

concerned that time constraints would not permit a vote on a proposed bond issue within the time believed available. Appellants contend the city officials desired to avoid a public vote for fear the bond proposal would be defeated.

Sometime prior to June 25, 1986, the Halstead city administrator had received from the division of the budget annual population figures which had been compiled and distributed by the Bureau of the Census. Those figures indicated the city's population was 2,049 in 1984; 2,049 in 1985; and 2,021 in 1986. Consequently, the city council adopted a resolution on June 25, 1986, directing the city clerk to certify the population as 2,021 and to request the Governor to issue a proclamation declaring Halstead to be a city of the second class. Governor John Carlin issued such a proclamation on July 22, 1986. It appears that the annual figures furnished by the Bureau of the Census are effective as of July 1 of each year. As the Halstead city council took its action on June 25, 1986, it should have used the 1985 figure of 2,049. However, the failure to do so cannot be said to be prejudicial to the appellants.

On August 12, 1986, appellants filed this action seeking a declaratory judgment and injunctive relief. They also sought and obtained a temporary restraining order. A motion for summary judgment was filed by defendants and on February 10, 1987, summary judgment was granted in favor of the City and the other defendants. Plaintiffs appealed, and the case was transferred to this court pursuant to K.S.A. 20-3018(c).

In *Hunt v. Dresie*, 241 Kan. 647, 740 P.2d 1046 (1987), we summarized the general rules relative to summary judgment, stating:

"Summary judgment is proper if no genuine issue of fact remains, giving the benefit of all inferences which may be drawn from the admitted facts to the party against whom judgment is sought. A trial court, in ruling on motions for summary judgment, should search the record to determine whether issues of material fact do exist. When a motion for summary judgment is filed, a mere surmise or belief by the trial court, no matter how reasonably entertained, that a party cannot prevail upon a trial will not justify refusing that party his day in court. When summary judgment is challenged on appeal, an appellate court must read the record in the light most favorable to the party who defended against the motion for summary judgment." 241 Kan. at 652-53.

Although the appellants specify five points on appeal, the

controlling issue is whether the City could use current population figures from the Bureau of the Census, rather than the official 1980 census figures, to obtain the status and designation of a second-class city. The official United States census was last compiled in 1980 and that census reflects that the City of Halstead had a population of 1,994. However, the Bureau of the Census does distribute interim population figures for counties and incorporated cities which apparently are professional estimates based upon studies of the demographics of each specific area and not upon an actual census. The latest of these population figures reflected a population of 2,021 for Halstead. It was this figure that was used to obtain second-class city status for Halstead.

We now turn to the controlling statutes. K.S.A. 14-101 authorizes a change in classification from a third-class city to a second-class city and provides in part:

"All cities now organized and acting as cities of the second class, by virtue of the authority of former acts, and all cities hereafter attaining a population of more than two thousand (2,000) and less than fifteen thousand (15,000), shall be governed by the provisions of this act; and whenever any city shall have hereafter attained a population of more than two thousand (2,000), and such facts shall have been duly ascertained and certified by the proper authorities of such city to the governor, the governor shall declare, by public proclamation, such city subject to the provisions of this act."

The statute does not specify how the determination of a population in excess of two thousand is to be made.

K.S.A. 1986 Supp. 11-201 provides:

"(a) Except as otherwise provided in subsection (b), *the most recent population figures available from the United States bureau of the census* as certified to the secretary of state by the division of the budget on July 1 of each year *shall be used for all purposes in the application of the statutes of this state.* Whenever the use of the population figures or the census of the state board of agriculture is referred to or designated by a statute, such reference or designation shall be deemed to mean the population figures certified to the secretary of state pursuant to this section. The city and county population figures certified to the secretary of state pursuant to this section shall be distributed by the division of the budget to the cities and counties of the state and to such other governmental entities as the division deems appropriate and shall be made available by the division upon request of any other person.

"The population figures certified to the secretary of state pursuant to this section shall be disposed of in accordance with K.S.A. 75-3501 *et seq.*

"(b) On July 1 of each year, the division of the budget shall distribute to the treasurer of each county a table showing the total population of the county, the total population of the county residing outside the boundaries of any incorporated city and the population of each incorporated city within the county, using the most recent information which is available from the United States bureau of the census and which provides actual or estimated population figures for both cities and counties as of the same date. The county treasurer shall use the table as the basis for apportioning revenue from any countywide retailers' sales tax pursuant to K.S.A. 12-192 and amendments thereto." (Emphasis added.)

The statute was amended in 1987; however, the amendments are not pertinent to the issues now before the court.

K.S.A. 11-202, upon which appellants rely in part, provides:

"Any county, city or township may conduct, or contract with the United States bureau of the census to conduct, for local purposes, a census of its inhabitants."

While all parties agree that K.S.A. 1986 Supp. 11-201 is the controlling statute, they do not agree on its interpretation and application to the facts of this case.

K.S.A. 1986 Supp. 11-201(a) provides that as a general rule "the most recent population figures available from the United States bureau of the census as certified to the secretary of state by the division of the budget on July 1 of each year shall be used for all purposes . . . ." City and county population figures are to be distributed by the division of the budget to the cities and counties of the state. Subsection (b), added in 1983, provides for use of "the most recent information which is available from the United States bureau of the census and which provides actual or estimated population figures for both cities and counties as of the same date" for purposes of apportioning revenue from any countywide retailers' sales tax between the city and the county.

Appellants argue that there is a "clear distinction" between the types of data from the Bureau of the Census to be used pursuant to subsections (a) and (b) of the statute. They argue that since subsection (b) permits use of "actual or estimated" population figures, subsection (a) by implication requires use of only actual figures from the most recent decennial census, and does not permit use of estimates. Appellants further argue that because K.S.A. 11-202 authorizes cities to conduct their own census or to contract directly with the U. S. Bureau of the Census to do so, the legislature intended to permit use of figures based only upon an actual census.

Appellees contend that the wording of 11-201(a) is plain and unambiguous, and that its language indicates that population is to be ascertained from Bureau of the Census figures as certified to the secretary of state by the division of the budget. They argue that 1980 census figures are irrelevant because the statute provides for use of figures supplied annually by the Bureau of the Census. We agree with the appellees. If cities and counties were limited by 11-201(a) to the use of actual census figures from the Bureau of the Census as opposed to the interim population figures from the same source, there would be no reason to require the certification of annual figures each July 1. The construction urged by appellants cannot be reconciled with the language of the statute which requires use of "the most recent population figures available from the United States bureau of the census as certified . . . by the division of the budget on July 1 of each year . . . ." Had the legislature intended to permit use only of decennial census figures, it could easily have so specified in the statute. The language of the statute which clearly envisions annually updated figures would be meaningless under the interpretation urged by appellants. We think it is clear that the periodic population figures issued by the Bureau of the Census and certified by the division of the budget to the secretary of state on July 1 of each year may be used to meet the population requirements of K.S.A. 14-101.

We think it is equally clear that K.S.A. 11-202 authorizes alternative methods of determining local population figures and is permissive rather than mandatory. Under that statute and K.S.A. 1986 Supp. 11-201(a), cities have the option of relying upon the annual population figures from the Bureau of the Census, or they may contract directly with the Bureau of the Census to conduct an actual census or they may conduct their own actual census. Each of the three alternatives appears to meet the requirement of K.S.A. 14-101 that a population of more than 2,000 be "duly ascertained" by local authorities in order to obtain a gubernatorial proclamation of second-class city status.

Our determination is dispositive of the controlling issues in this case. As indicated earlier, appellants have asserted several other issues which we have carefully considered and find to be without merit. There are no unresolved issues of material fact

and the learned trial judge was correct in granting summary judgment in favor of appellees.

The judgment is affirmed.